**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA**

In re

**CYNTHIA ANN MARTELLARO**,

Debtor.

Case No.  **08-60408-13**

## *MEMORANDUM of DECISION*

At Butte in said District this 5th day of December, 2008.

Confirmation of Debtor's Chapter 13 Plan filed August 29, 2008, and the Trustee's

objection thereto are pending in this Chapter 13 bankruptcy .  A hearing on confirmation was

held after due notice at Missoula on October 9, 2008.  The Debtor Cynthia Ann Martellaro

("Cynthia" or "Debtor") appeared and testified, represented by attorney Nikolaos G. Geranios

("Geranios") of Missoula.  The Standing Chapter 13 Trustee Robert G. Drummond of Great

Falls, Montana, appeared in opposition.  No exhibits were admitted.  After the conclusion of the

parties' cases-in-chief the Court granted the parties time to file simultaneous briefs, which have

1

been submitted and reviewed together with the record[1] and applicable law.  The matter is ready for decision.

For the reasons set forth below, a separate Order will be entered sustaining the Trustee's objection and denying confirmation of Debtor's Chapter 13 Plan because it discriminates unfairly against the unsecured creditors in violation of 11 U.S.C. § 1322(b)(1), and because Debtor failed to demonstrate that her $150 per month payment to her student loans is a "special circumstance" justifying the additional expense under 11 U.S.C. § 707(b)(2)(B).  This memorandum contains this Court's findings of fact and conclusions of law.

This Court has original jurisdiction of this Chapter 13 case under 28 U.S.C. § 1334(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) involving confirmation of a Chapter 13 plan.  At issue is:  (1) whether Debtor's Plan discriminates unfairly against the class of unsecured claims in violation of § 1322(b)(1) when it provides for the continuation of regular $150 monthly payments to Debtor's student loan creditors outside the plan while paying little or nothing to unsecured nonpriority creditors; and (2) whether Debtor's monthly $150 payments to student loans outside the Plan are justified under 11 U.S.C. § 707(b)(2)(B) as "special circumstances" because interest is accruing throughout the term of the Plan and the Debtor will end up owing more at the end of the Plan if not allowed to pay the $150 outside of the Plan.  This Memorandum of Decision sets forth the Court's findings of fact and conclusions of law.

---

[1]The Debtor's brief (Docket No. 60) is accompanied by an attachment which is an affidavit of the Debtor.  The Debtor testified under oath at the hearing, subject to cross examination by the Trustee.  The Trustee has not been afforded the opportunity to cross examine the Debtor on all the statements in the affidavit.  The Court does not approve of the practice of offering evidence by affidavit, which deprives the opposing side of its right to cross examination. Therefore, the Court disregards Debtor's affidavit, and none of the statements in the affidavit are considered in the Court's decision.

## FACTS

The Debtor Cynthia Martellaro lives in Hamilton, Montana, where she is currently employed as a scientist at GSK in Hamilton.  She testified that she earns approximately $52,000 in salary per year plus a bonus.

Cynthia testified that she consolidated several student loans into one with a balance of between $45,000 to $48,000, which accrues interest at an annual rate of between five and six percent.  Her current monthly payment on her consolidated student loans is $150.00.  She testified she has no more deferments available on her student loans.

Cynthia filed a voluntary Chapter 7 petition on April 14, 2008, and moved to convert the case on June 3, 2008.  The case was converted to Chapter 13 by Order entered June 17, 2008. Debtor filed her Chapter 13 Plan on July 9, 2008, filed amended Schedules[2] on July 17, 2008, and filed an amended Chapter 13 Plan on August 29, 2008 (Docket No. 38) (hereinafter Debtor's "Plan").  Her Statement of Financial Affairs states at paragraph 1 that she earned wages in 2006 in the sum of $43,851.00, and earned wages of $45,166.00 in 2007.  Debtor's Plan provides for total payments of $1,908.00 over a period of 36 months at the rate of $53 per month.  The liquidation analysis at paragraph 2(f) provides that unsecured claims will receive at least ($0.00). The Debtor was asked on cross examination what she intends to achieve in her Plan, and she answered that she intended to get relief from her debts and creditors.

Two claims for student loan debt were filed on June 19, 2008, by the Student Assistance

---

[2]Docket No. 27 includes the amended Schedules, which are signed by the Debtor under penalty of perjury declaring that she read them and that "they are true and correct to the best of my knowledge, information, and belief."

Foundation of Montana assigning to Montana Guaranteed Student Loan Program ("MGSLP")[3].

Proof of Claim No. 1 states an unsecured student loan claim in the amount of $6,283.93 incurred

on 9/5/2002. Proof of Claim No. 2 states another student loan claim in the amount of

$41,643.01. The assignments of claims attached to Claim No. 1 states the total student loan debt

in the amount of $47,926.94. Both Claims 1 and 2 were assigned to Educational Credit

Management Corp. ("ECMC") on August 18, 2008 (Docket No. 34). Debtor's Plan and notice of

continued confirmation hearing were served on ECMC, which did not file a response or appear.

On September 4, 2008, Debtor filed an amended Form B22C (Docket No. 41). On the

top of page 1 and at Line 17 of page 2 the Debtor checked the boxes which state that the

applicable commitment period is 5 years. At Line 57a Debtor listed a monthly "Deduction for

special circumstances" in the amount of $150.00, the nature of which she described as

"Nondischargeable student loan debt." Debtor's amended Schedule J (Docket No. 27) lists a

monthly expense in the amount of $300 at item number 17 described as "Student loan." The

Trustee asked the Debtor on cross examination about the discrepancy between her Schedule J

student loan payment amount of $300 and the $150 amount on Form B22C and she answered

that she was not sure.

The Trustee filed an objection to confirmation on September 26, 2008, arguing:

> 1. Paragraph 5 of the plan provides that the Debtor will make student loan
> payments "directly to creditors" and not through the Plan. The direct payment to
> the student loan creditors is unreasonable discrimination among creditors in a
> class which is prohibited by 11 U.S.C. § 1322(b)(1). The plan provides that the

---

[3]The Court takes judicial notice of the claims on file under Fed. R. Evid. 201(c)

student loan creditors will be paid in full[4] while the other creditors will receive almost nothing.

      2. The Debtor has made a deduction on line 57(a) deducting $150.00 as a special circumstance for " non-dischargeable student loan debt." The fact that the Debtor has a student loan debt does not constitute a "special circumstance."  The student loan debt does not arise as a consequence of serious medical condition or a call to active duty in the Armed Forces.

At the confirmation hearing the Debtor testified that she is "absolutely" struggling financially now.  She testified that she currently is paying $150.00 per month directly to her student loans, but that she has not calculated the interest on her student loans and does not know what her student loan payment will be after she completes her Plan.  She testified that the interest on her student loans is accruing and will only get harder to pay in the future.  She admitted that she has $203 per month to pay for 3 years, but testified that after 3 years of $150 per month payments the amount of her student loans will be roughly the same.  She testified that she cannot pay more than $150 per month to her student loan creditors, and that after she receives her discharge the payment on her student loans may increase to $160 if she is forced to pay other unsecured creditors pro rata with the student loans.

Debtor was asked on direct examination why her student loan payments outside of her plan are "special circumstances," which should be allowed.  She answered that they are special circumstances because interest keeps accruing on her student loans, and that if she does not continue to make her $150 payment she is concerned that they will go into default and she will

---

[4]The Court has reviewed Debtor's Plan, and while paragraph 5(c) provides that "[d]ebtor shall pay student loans directly to creditors and not through the plan[,]" nowhere does the Plan provide as the Trustee contends that student loan creditors will be paid in full.  The amount of student loan debt shown by Proofs of Claims Nos. 1 and 2 far exceed the amount of Debtor's total plan payments.

end up at the completion of her plan with a higher student loan balance than before.  The Debtor did not offer any documentation of her $150 student loan expense paid outside the plan at the hearing.

The Trustee asked the Debtor whether she could carry out her plan without the discrimination and she answered "No", that her student loan debt is too great and she would end up owing much more on her student loans after the plan than before due to accruing interest.  The Trustee asked her to explain how paying her student loan debts with the other unsecured creditors is an insurmountable burden, and she answered that she is struggling financially and needs to meet her obligations.

The Trustee asked the Debtor on cross examination whether any funds would be remaining from her $53 monthly plan payment, after paying the Trustee's fee and her attorney's fee.  She answered that she was not sure.

## DISCUSSION

It is well established law in this Circuit that for a bankruptcy court to confirm a plan, "each of the requirements of section 1325 must be present and the debtor has the burden of proving that each element has been met."  *In re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994); *In re Andrews*, 49 F.3d 1404, 1408 (9th Cir. 1995); *In re Tuss*, 360 B.R. 684, 690 (Bankr. D. Mont. 2007); *In re Tranmer*, 355 B.R. 234, 241 (Bankr. D. Mont. 2006).  Section 1325(a)(1) requires confirmation of a plan if "the plan complies with the provisions of this chapter and with the other applicable provisions of this title."  Therefore, the Debtor has the burden of proof on all elements of confirmation.  *In re Hill*, 268 B.R. 548, 552 (9th Cir. BAP 2001).

At the hearing the Court directed counsel to discuss the Court's decision *In re Carlson*,

6

276 B.R. 653 (Bankr. D. Mont. 2002) relating to § 1322(b)(1).  The Trustee objects to

confirmation of Debtors' Plan, arguing that the Plan unreasonably discriminates among the

unsecured class of creditors in violation of § 1322(b)(1).  The Trustee cites the four factor test

used in this Court and the Ninth Circuit Bankruptcy Appellate Panel ("BAP") in determining

whether to allow discriminatory treatment under § 1322(b)(1), citing *In re Pearson*, 20 Mont.

B.R. 507, 511 (Bankr. D. Mont. 2003), *In re Labib-Kiyarash*, 271 B.R. 189, 192 (9th Cir. 2001),

*In re Sperna*, 173 B.R. 654, 658 (9th Cir. BAP 1994), and *Amfac Distribution Corp. v. Wolff (In*

*re Wolff)*, 22 B.R. 510, 512 (9th Cir. BAP 1982).  The Trustee argues that the Debtor failed to

satisfy all four of the *Wolff* factors.  The Trustee contends that Debtor could make a distribution

of 8.5% of unsecured claims if she classified her student loan debts with other general unsecured

claims, instead of only the negligible amount of $17.20 which he argues the general unsecured

claims will receive under the Plan while the student loan creditor receives $5,400.00.  He further

argues that Debtor admitted at the hearing that she could carry out her Plan without the

discrimination.

The Debtor raises numerous arguments, some of which may be disposed of quickly.  The

Debtor contends that, with the passage of Bankruptcy Abuse Prevention and Consumer

Protection Act of 2005 (Pub. L. 109-8) ("BAPCPA")[5], § 1322(b)(1) is not applicable to §

1322(b)(5), and alternatively contends that any discrimination is not "unfair" under § 1322(b)(1).

Debtor distinguishes *Wolff* and *Carlson* as pre-BAPCPA cases and argues that, because

BAPCPA significantly modified § 707(b)(2), a debt classified as long-term under § 1322(b)(5)

_____

[5]BAPCPA became effective for the most part on October 17, 2005.

7

therefore need not comply with § 1322(b)(1) because § 1322(b)(5)[6] is a "stand-alone" provision which does not refer to § 1322(b)(1) like it refers to § 1322(b)(2)[7].

Parts of the Bankruptcy Code, including § 1325(b)(2) and § 707(b)(2), underwent substantial revision by BAPCPA. *Tuss*, 360 B.R. at 690; *Tranmer*, 355 B.R. at 241. Certainly, in drafting BAPCPA Congress demonstrated that it knows how to amend statutes. However, unlike § 1325(b)(2) and § 707(b)(2), BAPCPA did not amend a single word of § 1322(b)(1) or § 1322(b)(5), and Debtor cites no controlling authority, which states that § 1322(b)(1) no longer applies. This Court in *Carlson* noted the Ninth Circuit BAP's decision *Labib-Kiyarash* explaining the interplay between § 1322(b)(5) and § 1322(b)(1), where the BAP adopted the majority view that § 1322(b)(5) must be read in conjunction with § 1322(b)(1). *Carlson*, 276 B.R. at 657-58; *Labib-Kiyarash*, 271 B.R. at 195-96. The BAP wrote:

> If Congress had intended to preclude § 1322(b)(5) from being read in conjunction with § 1322(b)(1), then it would have done so expressly. *See [In re] Colley*, 260 B.R. [532] at 536-37 [(Bankr. M.D. Fla 2000)] (citation omitted). We read §§ 1322(b)(1) and (b)(5) together, and we give effect to both sections. *See U.S. v. Trident Seafoods Corp.*, 92 F.3d 855, 862-63 (9th Cir. 1996) (statutory construction requires that statutes be read in harmony and not in conflict).

*Carlson*, 276 B.R. at 658, quoting *Labib-Kiyarash*, 271 B.R. at 195.

Courts generally avoid construing one provision in a statute so as to suspend or supersede

---

[6]Section 1322(b)(5) provides that a plan may – "notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable period of time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due."

[7]Section 1322(b)(2) provides that a plan may – "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."

another provision. *Rake v. Wade,* 508 U.S. 464, 471-72, 113 S.Ct. 2187, 2192, 124 L.Ed.2d 424 (1993). Courts should disfavor interpretations of statutes that render statutory language superfluous, and so long as no positive repugnancy exists between two laws, a court must give effect to both. *Connecticut National Bank v. Germain*, 503 U.S. 249, 252-54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). Since BAPCPA did not expressly amend § 1322(b)(1) or § 1322(b)(5), the rule in this district stated in *Carlson,* and the BAP's rule in *Labib-Kiyarash*, continue to apply post-BAPCPA and this Court gives effect to both sections.

Debtor argues that any debt classified as long-term under § 1322(b)(5) may be paid in full at the contract rate during the life of the plan and therefore § 1322(b)(1) is simply inapplicable. This argument is undermined by Debtor's testimony that she is barely keeping up with interest payments. She does not propose to pay the student loans in full during the life of the plan. A debtor may use § 1322(b)(5) to maintain long-term student loan payments at the contract rate and cure any arrearage through the plan, provided that the plan satisfies the *Wolff* test for unfair discrimination. *Labib-Kiyarash,* 271 B.R. at 195; *In re Pegar*, 20 Mont. B.R. 494, 498-99 (Bankr. D. Mont. 2003); *Pearson,* 20 Mont. B.R. at 510-11.

### A. Unreasonable Discrimination – § 1322(b)(1).

Discrimination among classes of unsecured claims is governed by § 1322(b)(1) which provides that a plan may "designate a class or classes of unsecured claims . . . but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims." The Ninth Circuit BAP has noted: "By its own terms, § 1322(b)(1) allows for discriminatory treatment among classes of creditors, as long as that

9

treatment is not unfair." *Labib-Kiyarash*, 271 B.R. at 192; *Sperna*, 173 B.R. at 658.

The burden of proof is on the Debtor to show that her proposed discrimination between the student loan creditor and other general unsecured creditors is not unfair. *Carlson*, 276 B.R. at 658; *Labib-Kiyarash*, 271 B.R. at 195; *Pegar*, 20 Mont. B.R. at 499; *Pearson,* 20 Mont. B.R. at 511. This Court has wide discretion in making this determination. *Labib-Kiyarash*, 271 B.R. at 196.

Debtor argues that a strong public policy exists in favor of education which justifies disparate treatment of student loan debt urged by the Debtor because it "would enable Debtor to emerge from bankruptcy with a 'fresh start'." This contention contradicts Debtor's argument earlier in her brief that she is barely keeping up with her interest payments with her $150 per month payment, with little or no reduction in principal, and thus either way Debtor will emerge from this case with substantial student loan debt.

In *Sperna* the BAP considered debtors' "fresh start" argument and found it unpersuasive. 173 B.R. at 659. The BAP noted that debtors often emerge from Chapter 13 with continuing obligations on long term debt, and that tools afforded debtors under Chapter 13 allow them to achieve a fresh start "while maintaining a balance with other Congressional policy considerations . . . such as the creation of a stable plan that treats all creditors fairly ....". *Sperna*, 173 B.R. at 659. The BAP noted that when Congress amended § 1328 in 1990 to provide that student loans would not be discharged in a Chapter 13 Plan it showed Congress' desire that student loans be repaid, and that Congress did not grant student loans priority status in §§ 507 and 1322(a)(2) and did not specifically mention them in § 1322(b)(1) as it did with co-signed consumer debts, which can be treated differently. *Id.*

In *Wolff* the BAP recognized that "there will be occasions where unsecured claims might be classified and treated differently, even though the legal character of the claims is identical and the treatment is discriminatory, but not unfairly so," and adopted four factors to consider when determining whether discrimination is "unfair":

> (1) whether the discrimination has a reasonable basis;
> (2) whether the debtor can carry out a plan without the discrimination;
> (3) whether the discrimination is proposed in good faith; and
> (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.

*Wolff*, 22 B.R. at 512; *Labib-Kiyarash*, 271 B.R. at 192.  This Court followed *Wolff* in *Carlson*, 276 B.R. at 655-66.  The Court cautioned that "due to the factual nature of the analysis required under the *Wolff* test and the fact that such test does not provide a great degree of predictability or guidance, the Court is still of the belief that the determination of whether discrimination among creditors is unfair must be made on a case-by-case basis."  *Carlson*, 276 B.R. at 658.

The first *Wolff* factor is whether the discrimination has a reasonable basis.  The nondischargeable nature of student loans is not, by itself, a reasonable basis for discrimination. *Carlson*, 276 B.R. at 658; *Labib-Kiyarash*, 271 B.R. at 196, *Sperna*, 173 B.R. at 658.  In order for discrimination to have a reasonable basis it must advance the purposes behind Chapter 13. *Carlson*, 19 Mont. B.R. at 394; *Sperna*, 173 B.R. at 658.

The BAP noted that factors such as special provisions for the collection of student loans "might be relevant" to justify disparate treatment, but the debtors in *Sperna* did not present any evidence demonstrating that such factors could affect their plan.  *Sperna*, 173 B.R. at 659. Similarly, in *Carlson* the Court denied the debtors' proposed discrimination because debtor presented no articulated reason.  276 B.R. at 659.  In *Pearson* the Court found that the debtors

11

failed to satisfy the first *Wolff* factor because their only basis for the discrimination in favor of student loans was that their fresh start would be facilitated by improving their credit score, they would avoid accruing additional interest and would not face as large a student loan debt when they emerged from the plan[8]. 20 Mont. B.R. at 513.

By contrast, in *Pegar* and the Court's recent decision in *In re Demarais*, 20 Mont. B.R. 272 (Bankr. D.Mont. 2002), the Court approved the proposed discrimination. In *Pegar* the Debtor testified that if she did not continue to make her regular monthly payment the student loan creditor would report her default on her credit rating, file a motion for relief from the stay and proceed against the debtors' assets outside of bankruptcy, including garnishment of her wages, while with the limited discrimination the debtors would be current on student loans after the plan and be able to resume making contributions to their retirement. 20 Mont. B.R. at 500-502. In *Demarais* the debtor presented evidence, through testimony, that payment of his student loans through the debtor's plan would prompt collection action by the student loan creditor, and would result in penalties upon reinstatement of the loan at the end of the debtor's plan, including a lump sum payment to cover all missed payments, while if the discrimination were allowed to pay regular long-term payments he would qualify for a home loan. 20 Mont. B.R. at 276-77.

In the instant case the Debtor's testimony falls short of the proof offered in *Pegar* and *Demarais*, and is more akin to the evidence deemed insufficient in *Pearson*. Debtor argues that her discriminatory treatment of her student loans has a reasonable basis because her student loan debt is long-term, nondischargeable, that she would suffer significant economic harm if she were

---

[8]The debtor simply parroted his attorney's advice about the effect of default, which was gleaned from reading another decision, *In re Demarais*, 20 Mont. B.R. 272 (Bankr. D. Mont. 2002).

required to default on her $150 payment, that the unsecured creditors would receive more under her Plan than in a chapter 7, and that if she did not discriminate the other unsecured creditors would receive a negligible amount because of the pro rata share which the student loan creditors would receive without the discrimination.

Debtor argues that repayment of her student loans is not a "lifestyle choice" nor a use of discretionary income that should be directed in a different way in a Chapter 13, but rather an economic and legal necessity to avoid another default situation and unavoidable financial distress at the end of the chapter 13 case, quoting *In re Webb*, 370 B.R. 418, 440 (Bankr. N.D. Ga. 2007). Debtor contends that she has exhausted all her deferments and negotiated a hardship reduction of her monthly student loan payments to $150, but is barely keeping up with the interest rate with "very little going towards principal."  If not permitted to pay her student loans directly, Debtor argues, her nondischargeable student loan debt will accrue with significant interest over the life of her Plan, while providing only a "minuscule" benefit to the other unsecured creditors of only $853 after payment of the Trustee's expense.

The evidence shows that Debtor's student loan debt is long-term and nondischargeable, but she failed to offer any evidence that she would suffer significant economic harm other than the accrual of interest and a large nondischargeable debt at the end of the Plan term, which this Court found was not enough to satisfy the first prong of the *Wolff* test in *Pearson*.  20 Mont. B.R. at 513 ("The Court is hard-pressed to think of any nondischargeable obligation that would not fit within Debtors' broad purpose for discrimination as set forth above.  Thus, if the Court were to accept Debtors' reasoning, the Court would essentially abolish the first prong of the *Wolff* test and that is certainly not what this Court had in mind when it adopted the test ...").  The Debtor

13

testified that she was "concerned" about going into default on her student loans, but offered no evidence of a threat of collection activity by the creditor in the event of default as was proven in *Pegar* and *Demarais*. The Court concludes that Debtor failed her burden of proof to satisfy the first prong of the *Wolff* test.

Factor two of the *Wolff* test considers whether the debtor can carry out a plan without the discrimination. Under this factor, bankruptcy courts should examine "what payments were due under the loan agreements, when the last payment was due under the loan agreements in relation to the plan, whether there were any arrearages, whether the loans have been accelerated and whether the plans would effect an acceleration." *Carlson*, 19 Mont. B.R. at 394 (quoting *Sperna*, 173 B.R. at 659). The Debtor at first refused to admit that she could carry out her Plan without the discrimination, but her reasons were the same as under the first factor, i.e., that the amount of her student loan debt is too high and would not be reduced without the discrimination, and she is struggling financially to meet her obligations.

It appears that the last payment comes due on Debtors' consolidated loans after completion of the plan and that the loans have not been accelerated. Whether the Plan effects an acceleration is not clear, but possible if her $150 payment outside the Plan is not allowed. Debtor argues that she will be unable to carry out a plan without the discriminatory treatment "because doing so will cause her significant financial harm" because of the accrual of interest over the term of the plan that will "wreak havoc on her finances" at the end of the plan. She argues that she cannot cut back on her expenses enough to pay her disposable income and the $150 monthly student loan payment to avoid defaulting, and that the consequences "would completely obviate chapter 13 relief."

14

Not unlike the debtor in *Demarais*, the Trustee elicited testimony from the Debtor on cross-examination that the Debtor has $203 per month to pay through her Plan over 3 years.  In *Demarais* the Court noted that the debtor's admission was not determinative.  20 Mont. B.R. at 278.  But in *Demarais* the debtor specifically testified that the student loan creditors would initiate collection action if the debtor were not allowed to make his full monthly payment.  The Debtors in the instant case have provided no such evidence.  Accordingly, the only evidence before the Court is Debtor's testimony that she cannot carry out her Plan if the student loan obligations are paid on a pro rata basis with other unsecured obligations, simply because of the accruing interest and her financial hardship.  The Court concludes in its discretion that the Debtor failed her burden of proof to satisfy the second prong of the *Wolff* test.

This Court, in cases deciding whether excepting student loans from discharge would impose an undue hardship under 11 U.S.C. § 523(a)(8), has noted that federal regulations, 34 C.F.R. § 685.209[9], provide for an income contingent repayment plan known as the "William D. Ford Program," ("Ford Program"), where unpaid portions of loans are cancelled after 25 years. *See In re Hamilton,* 361 B.R. 532, 552 n.20 (Bankr. D. Mont. 2007); *In re Hutchison*, 296 B.R. 819, 826 (Bankr. D. Mont. 2003).  The record in the instant case is devoid of any evidence that the Debtor in the instant case was aware of or has applied for the Ford Program, which could obviate the Debtor's only argument against paying her student loans through her Plan together with the other general unsecured claims.  Since the Debtor is the party with the burden of proof under § 1325, the lack of evidence regarding Debtor's utilization of the Ford Program as a

---

[9]The 2008 version of 34 C.F.R. § 685.209 shows the income contingent repayment plan still in place.

remedy weighs against confirmation.

As to *Wolff* factor three, the BAP instructs that "an appropriate view of good faith under the *Wolff* test is whether the discrimination involved furthers the goals of the debtor, satisfies the purposes behind Chapter 13 and does not require any creditor or group to bear an unreasonable burden. For example, if the plans were being used to effectively accelerate payments on the loans at the expense of the unsecured creditors, such discrimination would be in bad faith." *Sperna*, 173 B.R. at 660; *Carlson*, 19 Mont. B.R. at 395. The Debtor argues that she proposed the discrimination in good faith and repeats that her student loan obligations are a "special circumstance" under § 707(b)(2)(B), and that she is in "technical compliance" with the means test under § 1325(b) which precludes a finding of bad faith. No evidence exists in Debtor's plan that it is being used to accelerate payments on the student loans at the expense of the unsecured creditors. On the other hand with the discrimination the unsecured creditors under the proposed Plan will receive a negligible distribution. On balance, the Court finds that the Debtor has satisfied factor three.

The final *Wolff* factor is whether the degree of discrimination is directly related to the basis or rationale for the discrimination. In *Sperna*, the BAP clarified its distinction between factor 2 and factor 4 as follows: "The second factor asks whether any discrimination at all is necessary. If the answer is affirmative, the court must then determine if the amount, or degree, of discrimination proposed is directly related to the reason for the discrimination." *Sperna*, 173 B.R. at 660. With respect to this final factor the Debtor argues that the degree is discrimination is directly related to the basis or rationale of the discrimination, and repeats her earlier arguments and that the student loans are special circumstances under § 707(b)(2)(B)(i). In *Pearson* this

16

Court found "that a debtor cannot satisfy the fourth *Wolff* factor if the basis for the discrimination is not reasonable" under the first factor. *Pearson*, 20 Mont. B.R. at 515. Since the Court concluded that the Debtor failed to satisfy her burden of proof under the first *Wolff* factor, the Court must conclude that she has failed to satisfy her burden of proof under the fourth factor.

Exercising its wide discretion, the Court concludes that the Debtor has not satisfied her burden of proving that the separate classification of her long-term student loan payments does not discriminate unfairly against the other unsecured nonpriority claims. *Labib-Kiyarash*, 271 B.R. at 195; *Wolff*, 22 B.R. at 512; *Pearson*, 20 Mont. B.R. at 515. Accordingly, the Trustee's objection relating to Debtors' proposed discrimination based on § 1322(b)(1) is sustained.

**B.  Other Necessary Expenses.**

Debtor contends that her student loan repayments are included as "Other Necessary Expenses" under 11 U.S.C. § 707(b)(2)(A)(ii)(I) and Section 5.15.1.10 (05-09-2008) of the Internal Revenue Service Manual. Section § 1325(b)(3) invokes subparagraphs 707(b)(2)(A) and (B) for determining "[a]mounts reasonably necessary to be expended under § 1325(b)(2)." *Tranmer*, 355 B.R. at 248; *Tuss*, 360 B.R. at 698. Subparagraph 707(b)(2)(A) sets forth debtors' allowable monthly expenses, as explained in *In re McGuire*, 342 B.R. 608, 612 (Bankr. W.D. Mo. 2006):

> [F]or above-median debtors, the statute breaks down allowable expenses into five general categories: (1) those that fit into the IRS' National Standards, which include food, clothing, household supplies, personal care, and miscellaneous expenses; (2) those that fit into the IRS' Local Standards, which include housing and transportation; (3) actual expenses for items categorized by the IRS as "Other Necessary Expenses," including such items as taxes, mandatory payroll deductions, health care, and telecommunications services; (4) actual expenses, without limitations, for certain other expenses specified by the Bankruptcy Code, such as care for disabled family members and tuition; and (5) payments on

17

secured and priority debts.

The plain language of § 707(b)(2)(A)(ii)(I) provides that "[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amount specified under the National and Local Standards." *Tuss*, 360 B.R. at 699; *Tranmer*, 355 B.R. at 249 (quoting *In re Fowler*, 349 B.R. 414, 418 (Bankr. D. Del. 2006)). The provision relied on by the Debtor in the instant case is that portion of § 707(b)(2)(A)(ii)(I) which provides that, in addition to debtor's monthly expense amounts specified under IRS National and Local Standards, "the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the [IRS] for the area in which the debtor resides."

"It is instructive to refer to IRS publications for guidance under the Local Standards." *Tuss*, 360 B.R. at 699; *Tranmer*, 355 B.R. at 249. "Other Necessary Expenses" are located in the IRS Financial Analysis Handbook, Section 5.15.1.10, which allows other expenses to be considered "if they meet the necessary expense test – they must provide for the health and welfare of the taxpayer ... or they must be for the production of income." *Tuss*, 360 B.R. at 698; *Tranmer*, 355 B.R. at 249. The U.S. House of Representatives in its committee report instructed that:

> In addition to other specified expenses [§ 707(B)(2)(A)(ii), (iii) and (iv)], the debtor's monthly expenses – *exclusive of any payments for debts* (unless otherwise permitted – must be the applicable monthly amounts set forth in the Internal Revenue Service Financial Analysis Handbook [pt.5.15.1] as Necessary Expenses [pt. 5.15.1.7] under the National [pt.5.15.1.8] and Local Standards [pt. 5.15.1.9] categories and the debtor's actual monthly expenditures for items categorized as Other Necessary Expenses [pt.5.15.1.9].

H.R. REP. NO. 109-31, at 13-15. (2005) (emphasis added); *Tuss*, 360 B.R. at 698-99; *Tranmer*, 355 B.R. at 249.

18

The Debtor's $150 payments on her student loan debts do not qualify as "Other Expenses" under Section 5.15.1.10 of the IRS Financial Analysis Handbook because they do not meet the necessary expense test – they do not provide for the current health and welfare of the Debtor and/or her family and are not for the production of Debtor's current income.  As far as can be discerned from the record the Debtor has completed her education and is employed.  No evidence exists in the record that her $150 student loan debt repayments are a condition of her employment, or that the student loan repayments are required for a physically or mentally challenged child and no public education providing similar services is available.  *See* IRS Financial Analysis Handbook, Section 5.15.1.10[10].  Debtor's student loan debt repayments are not "Other Expenses" under § 707(b)(2)(A)(ii)(I).

### C.  Special Circumstances – § 707(b)(2)(B).

Section 707(b)(2)(B) provides:

(B)(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide--

(I) documentation for such expense or adjustment to income; and

(II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

---

[10]The examples given are education credits which an attorney must take each year to remain accredited and licensed to practice before a State Bar, or which a teacher must take to retain their position or pay.  Section 5.15.1.10.

Debtor argues that her student loan repayments are "special circumstances" which rebut the presumption of abuse under § 707(b)(2)(B).  Debtor cites *In re Templeton*, 365 B.R. 213 (Bankr. W.D. Okl. 2007), *In re Haman*, 366 B.R. 307 (Bankr. D. Del. 2007), and *In re Robinette*, 2007 WL 2955960 (Bankr. D. N.M.), *In re Knight*, 370 B.R. 429 (Bankr. N.D. Ga. 2007) and other cases in support of her argument that her student loans qualify as special circumstances to rebut the presumption of abuse, but Debtor admits that a split of authority exists with other courts holding student loans do not fall within special circumstances.  *In re Lightsey*, 374 B.R. 377 (Bankr. D. Ga. 2007); *In re Vaccariello*, 375 B.R. 809 (Bankr. N.D. Ohio 2007); *In re Pageau*, 383 B.R. 221 (Bankr. D. N.H. 2008).  Debtor argues that the examples of special circumstances in § 707(b)(2)(B)(i) are not exclusive, and that the statute does not require that the circumstance be outside of a debtor's control.  *In re Littman*, 370 B.R. 820, 830-31 (Bankr. D. Idaho 2007).

In considering special circumstances this Court looks directly to § 707(b)(2)(B), as specifically authorized by § 1325(b)(3), requiring itemized documentation of expenses and a detained explanation of the "special circumstances" that justify the additional expenses for which no reasonable alternative exists.  *Tuss*, 360 B.R. at 700; *Tranmer*, 355 B.R. at 250.  The Court concludes that the Debtor failed to satisfy her burden of proof under § 707(b)(2)(B)(i) & (ii) because she failed to provide any documentation of her student loan expenses and her explanation of the special circumstances falls short of showing such expenses are necessary and reasonable, or for which no alternative exists.  The Court finds that student loan debt among bankruptcy debtors is a common and ordinary circumstance, not a "special" circumstance.

Section 707(b)(2)(B)'s "special circumstances" contemplates circumstances beyond a

debtor's reasonable control, such as a "serious medical condition, or a call or order to active duty in the Armed Forces." *Tuss*, 360 B.R. at 701.  Hon. Terry L. Myers, in *In re Littman*, 370 B.R. 820, 831 (Bankr. D. Idaho 2007), writes that the argument that a common trait in the examples of an act outside of the debtor's control "is not compelling."  However, Judge Myers goes on to write that "compliance with the requirements to itemize, document, verify, establish reasonableness and necessity, and prove 'no reasonable alternative' are key."  370 B.R. at 820.

This Court finds that the Debtor has failed her burden of proof to show that her student loan debt repayments are  "special circumstances" under § 707(b)(2)(B) under either argument. The Debtor offered no documentation for admission into evidence at the hearing, and so the requirement of § 707(b)(2)(B)(ii)(I) is not satisfied at all.  Debtor's Form B22C entry at Line 57 of a $150 payment to her student loan debt contradicts her Schedule J amount for student loan payments of $300 and the Debtor could not explain the discrepancy.  Debtor failed to prove the reasonableness and necessity of her student loan repayments, and failed to prove that no reasonable alternative existed.  As the BAP noted in *Sperna,* 173 B.R. at 659, in a similar manner Congress had the opportunity to include student loan debt repayments in § 707(b)(2)(A)(ii)(I) or even as "special circumstances" in § 707(b)(2)(B), but Congress did not and nothing indicates that student loan debt repayments should be included among the expenses allowed under 707(b)(2)(B).[11]

### D.  Plan Term.

The Debtor argues that she has a negative monthly disposable income in the amount of

---

[11]A specific provision, § 707(b)(2)(A)(ii)(IV) allows actual expenses not to exceed $1,500 per year for each dependent child under 18 years of age under certain conditions, none of which apply in the instant case.

$89.11 if allowed to deduct $150.00 per month for her student loan obligations at Line 59 of Form B22C, and therefore does not have to fund a plan for 60 months under *In re Kagenveama*, 527 F.3d 990 (9th Cir. 2008).[12]  The Debtor's own Form B22C states that the applicable commitment period is 5 years, while her Plan provides for payments for only 3 years.  In another context the BAP has concluded that Form 22C is directly at odds with § 1325(b)(2)(B) and should be changed to comply with the statute.  *In re Wiegand*, 386 B.R. 238, 241, 243 (9th Cir. BAP 2008).  The Ninth Circuit's decision in *Kagenveama* was entered two months after the BAP's decision in *Wiegand*.  The Ninth Circuit noted that F.R.B.P. Rule 1007(b)(6) requires a debtor to file a statement of current monthly income on Form B22C, but did not note any conflict between the Form and the Code[13].  *Kagenveama*, 527 F.3d at 994 n.1.

Regardless, this Court above concluded that Debtor failed her burden to show that her $150 monthly student loan debt repayments are "special circumstances" under § 707(b)(2)(B), and therefore the Debtor is not entitled to list the $150 student loan debt repayment on Line 57.  Without that $150 expense the Debtor does not have a negative monthly disposable income on Line 59 of Form B22C and the reasoning of *Kagenveama,* that the "applicable commitment period" does not apply where there is no projected disposable income, does not apply in the instant case.  527 F.3d at 998-99.  The Debtor is an above-median debtor and the applicable commitment period under § 1325(b)(4) is 5 years.  *Kagenveama*, 527 F.3d at 998.

## CONCLUSIONS OF LAW

[12]Debtor notes that she will propose a 60 month plan if the $150 per month extraordinary expense at Line 59 is not allowed.

[13]The Court is unaware of any communication from the Advisory Committee to the Judicial Conference that amendments to Official Form 22C are pending.

1.   This Court has original jurisdiction of this Chapter 13 case under 28 U.S.C. § 1334(a).

2.   This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) involving confirmation of a Chapter 13 plan.

3.   The Debtor failed to satisfy her burden of proof under 11 U.S.C. § 1325(a)(1).

4.   Debtor's Plan discriminates unfairly against the class of unsecured claims in violation of § 1322(b)(1) when it provides for the continuation of regular $150 monthly debt repayments to Debtor's student loan creditor outside of the plan while paying little or nothing to unsecured nonpriority creditors.  Debtor failed to satisfy her burden of proof to show that the discrimination has a reasonable basis, failed to show that she cannot carry out a plan without the discrimination, and failed to show that the degree of discrimination is directly related to the basis or rationale for the discrimination under *Carlson*, 276 B.R. at 656, 659-60, and *Wolff*, 22 B.R. at 512.

5.   Debtor failed to satisfy her burden of proof to show that her student loan debt repayments are included as "Other Necessary Expenses" under 11 U.S.C. § 707(b)(2)(A)(ii)(I) and Section 5.15.1.10 (05-09-2008) of the Internal Revenue Service Manual, because the student loan payments do not provide for the health and welfare of the Debtor and/or her family and are not for the production of Debtor's income.

6.   Debtor failed to satisfy her burden of proof to show that the $150 monthly payment to student loans is justified under 11 U.S.C. § 707(b)(2)(B) as "special circumstances" because interest is accruing throughout the plan and the Debtor will end up owing more at the end of the plan if she is not allowed to make the $150 payments outside of the Plan.  Debtor offered no documentation required under § 707(b)(2)(B), failed to prove the  reasonableness and necessity of her student loan payments, and failed to prove that no reasonable alternative existed.

7.  The Debtor is an above-median debtor and the applicable commitment period under § 1325(b)(4) is 5 years.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above sustaining the Trustee's objections and denying confirmation of Debtor's amended Chapter 13 Plan; granting the Debtor 10 days to file a further amended Plan with a 5-year term, an amended Form B22C, and otherwise curing the Trustee's objections; and directing the Trustee to file a report within 5 days thereafter and, if the Trustee has remaining objections to confirmation, setting the matter for hearing at Missoula on January 15, 2009, at 10:00 a.m.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

24